# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON LEE WOLCOTT,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BOARD OF RABBIS OF NO. & SO. CALIFORNIA, et al.,<br><br>　　　　　Defendants. | Case No.  1:14-cv-00936-JLT (PC)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(Doc. 1)**<br><br>**30-DAY DEADLINE** |

**I.　　Background**

Plaintiff, Brandon Lee Wolcott, is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is proceeding pro se and in forma pauperis in this civil rights action pursuant to 28 U.S.C. § 1983 which he filed on June 18, 2014.  (Doc. 1.)

**A.　　Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

/ / /

**B.      Plaintiff's Complaint**

Plaintiff complains of acts that occurred while he was an inmate at California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California and names 63 persons/entities as Defendants.

Plaintiff's Complaint is 250 pages long -- 172 pages of pleading and 78 pages of exhibits. Plaintiff seeks preliminary and permanent injunctive relief. Due to the length of the complaint, the Court declines to summarize all of Plaintiff's allegations. From a cursory review of the complaint, it appears that Plaintiff complains of restrictions on various activities that he feels are mandated by his religion (i.e. denial of and or limits on conversion to Judaism, hard cover books, materials and artifacts, numbers of books, religious packages, observance of holy days, kosher diet, his facial beard, and an kosher work environment). Plaintiff variously argues that these denials and/or limitations violated his rights to free exercise, free speech, equal protection, due process, access to the courts, and his rights under the Eighth Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

Plaintiff may be able to amend to correct the deficiencies in his pleading so as to state a cognizable claim. However, the Court declines to expend its limited resources attempting to ferret out cognizable claims from Plaintiff's voluminous and expansive pleading. Thus, the Complaint is dismissed and Plaintiff is given the applicable standards both for pleading practices/requirements, the general legal standards based on the titles of the claims he is attempting to state, and leave to file a first amended complaint.

**C.      Pleading Requirements**

**1.  Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Swierkiewicz*, 534 U.S. at 512.  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations."  *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled."  *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C.  § 1915(e)(2)(B)(ii).

    Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiff must set forth only as much "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.  Factual allegations are accepted as true, but legal conclusions are not.  *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.  Courts are not required to indulge unwarranted inferences.  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

    Violations of Rule 8, at both ends of the spectrum, warrant dismissal.  A violation occurs when a pleading says too little -- the baseline threshold of factual and legal allegations required was the central issue in the *Iqbal* line of cases.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009).  The Rule is also violated, though, when a pleading says *too much*.  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1058 (9th Cir.2011) ("[W]e have never held—and we know of no authority supporting the proposition—that a pleading may be of unlimited length and opacity.  Our cases instruct otherwise.") (citing cases); *see also McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir.1996) (affirming a dismissal under Rule 8, and recognizing

that "[p]rolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges"). Plaintiff's Complaint violates Rule 8 for stating too much. Plaintiff is warned that "repeated and knowing violations of Federal Rule of Civil Procedure 8(a)'s 'short and plain statement' requirement are strikes as 'fail[ures] to state a claim,' 28 U.S.C. § 1915(g), when the opportunity to correct the pleadings has been afforded and there has been no modification within a reasonable time." *Knapp v. Hogan*, 738 F.3d 1106, 1108-09 (9th Cir. 2013). If he chooses to file a first amended complaint, Plaintiff should endeavor to make it as concise as possible. He should not persist in the chronological rendition of events format which he chose for his original complaint. He should merely state which of his constitutional rights he feels were violated by each Defendant and its factual basis and he must do so in **no more than twenty (20) pages**. If Plaintiff fails to comply with the twenty (20) page limitation, this action will be subject to dismissal as violating Rule 8(a) and may be counted as a strike for failure to state a claim under 28 U.S.C. § 1915(g) so as to bar him from filing in forma pauperis in the future.

### 2. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff must clarify which Defendant(s) he feels are responsible for each violation of his

constitutional rights and their factual basis as his Complaint must put each Defendant on notice of Plaintiff's claims against him or her.  *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).  Just naming a list of Defendants whom Plaintiff feels violated one of his rights, without linking each Defendant to facts that amount to such violation is insufficient.

### 3. Federal Rule of Civil Procedure 18(a)

Fed.R.Civ.P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) citing 28 U.S.C. § 1915(g).

The Court is unable to discern specific relationship between Plaintiff's claims.  The fact that claims are premised on the same type of constitutional violation(s) (i.e. deliberate indifference to serious medical needs, or infringements on Plaintiff's exercise of his religion via denial/limitation of various items/procedures as appears to be the case here) against multiple defendants does not make them factually related.  Also, Plaintiff will not be allowed to circumvent Rule 18 by merely listing every Defendant under each of his claims in a buckshot manner, without linking them individually to factual allegations that amount to violation of a protected right.  Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event.  Plaintiff is advised that if he chooses to file a first amended complaint, and fails to comply with Rule 18(a), all unrelated claims will be stricken.

**D.**     **Legal Standards for Plaintiff's Delineated Claims for Relief**

### 1. Free Speech

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his

5

[or her] status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Clement v. Cal.Dep't. of Corr.*, 364 F.3d 1148, 1151 (9th Cir. 2004) (per curiam); *Ashker v. Cal. Dep't of Corr.*, 350 F.3d 917, 922 (9th Cir. 2003); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

Infringement of the right to free speech under the First Amendment may occur either via implementation of an unconstitutional regulation, or when a facially valid regulation is misapplied. Challenges to prison restrictions that inhibit First Amendment interests, either via a regulation that is facially invalid, or via misapplication of a facially valid regulation, must be analyzed in terms of the legitimate policies and goals of the corrections system. *Pell* 417 U.S. at 822.

### a. Facial Validity of a Regulation:

A prisoner retains those First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir.2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977)) (internal quotation marks omitted). Accordingly, under *Turner v. Safley*, a prison regulation that impinges on an inmate's First Amendment rights is "valid if it is reasonably related to legitimate penological interests." *Shaw v. Murphy*, 532 U.S. 223 (2001); *Turner v. Safley*, 482 U.S. 78, 89 (1987).

### b. Misapplication of Facially Valid Regulation:

For purposes of determining whether a facially valid prison regulation was unconstitutional as applied to an inmate's speech, the pertinent inquiry is whether applying the regulation to that speech, was rationally related to the legitimate penological interest. *Hargis v. Foster*, 312 F.3d 404, 409-10 (9th Cir. 2002); *see also Shaw*, 121 S.Ct. at 1481 ("[T]he question remains whether the prison regulations, as applied to an inmate, are 'reasonably related to legitimate penological interests.' ") (emphasis added).

### 2. Religion

#### a. Free Exercise

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const.

amend. I. Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "Under the Constitution, 'reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments.'" *Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972) (addressing the rights of convicted prisoners)).

"Restrictions on access to 'religious opportunities' . . . must be found reasonable in light of four factors: (1) whether there is a 'valid, rational connection' between the regulation and a legitimate government interest put forward to justify it; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates;' (3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and (4) whether ready alternatives are absent (bearing on the reasonableness of the regulation)." *Pierce*, 526 F.3d at 1209 (quoting *Turner*, 482 U.S., at 89-90; *ref. Beard v. Banks*, 548 U.S. 521 (2006); *Mauro v. Arpaio*, 188 F.3d 1054, 1058-59 (9th Cir.1999) (en banc)).

### b. RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. Plaintiff bears the initial burden of demonstrating that defendants substantially burdened the exercise of his religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005). If plaintiff meets his burden, defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest *and* the least restrictive means of furthering that compelling governmental interest." *Id*. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Id*.

///

### c. Equal Protection

"To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (citation and quotations omitted). "The first step in equal protection analysis is to identify the [defendants' asserted] classification of groups." *Id.* (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir.1995)). The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. *Id.* An equal protection claim will not lie by "conflating all persons not injured into a preferred class receiving better treatment" than the plaintiff. *Id.* (quoting *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir.1986)).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972); *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004); *Sea River Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564. Further, to establish a violation of the Equal Protection Clause, the prisoner must present evidence of discriminatory intent. *Washington v. Davis*, 426 U.S. 229, 239-240 (1976); *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003); *Freeman v. Arpio*, 125 F.3d 732, 737 (9th Cir. 1997).

### d. The Establishment Clause

The First Amendment of the United States Constitution proscribes, in part, any law "respecting an establishment of religion." In its evaluation of the contours of the Establishment Clause, the Supreme Court has repeatedly determined that prison inmates retain the protections afforded them by the First Amendment. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987),

*superseded on other grounds by statute*, Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq., as recognized in *Hart v. CSP-Solano*, 2005 U.S. Dist. LEXIS 20057 (2005). There are several facts to be considered when a prisoner claims that the Establishment Clause has been violated. First, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). *See Turner*, 482 U.S., at 84; *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 129 (1977). Inmates clearly retain protections afforded by the First Amendment, *Pell v. Procunier*, 417 U.S. 817, 822 (1974), including its directive that no law shall prohibit the free exercise of religion. *See Cruz v. Beto*, 405 U.S. 319 (1972) ( per curiam ). Second, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *Pell v. Procunier*, 417 U.S., at 822-823; *Procunier v. Martinez*, 416 U.S. 396, 412 (1974).

    In considering the appropriate balance of these factors, we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, "who are actually charged with and trained in the running of the particular institution under examination." *Bell v. Wolfish*, 441 U.S., at 562. *See Turner v. Safley*, 482 U.S., at 86-87. To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. *See, e.g., Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S., at 128. We recently restated the proper standard: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89.

///

///

### 3. Due Process

#### a.   Procedural

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

#### b.   Substantive

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied*, 520 U.S. 1240 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

### 4. The Eighth Amendment

#### a. Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. *E.g., Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

### 5. Access to the Courts

Inmates have a fundamental constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). However, "prison law libraries and legal assistance programs are not

ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.*, at 351 (internal quotes and citations omitted). Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury,* 536 U.S. 403, 412-15 (2002).

"[T]he injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Inmates do not enjoy a constitutionally protected right "to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 355. Rather, the type of legal claim protected is limited to direct criminal appeals, habeas petitions, and civil rights actions such as those brought under section 1983 to vindicate basic constitutional rights. *Id.* at 354 (quotations and citations omitted). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original). "Although prison officials may not obstruct a prisoner's access to the courts by unreasonably blocking his access to a law library, prison officials may place reasonable limitations on library access in the interest of the secure and orderly operation of the institution." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 545-48 (1979)).

**6.  Supervisory Liability**

It appears that Plaintiff named various Defendants because they hold supervisory positions. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or

promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 677. "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.* Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct. *Id.*

"'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)). "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.*

Thus, allegations that various Defendants violated his rights and that supervisorial Defendants are somehow liable because the actors are under their supervision does not state a cognizable claim.

## II.     CONCLUSION

For the reasons set forth above, Plaintiff's complaint is dismissed, with leave to file a first amended complaint within 30 days. The Court will provide Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff must demonstrate in any first amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d

1 227 (9th Cir. 1980). The first amended complaint must allege in specific terms how each named
2 defendant is involved. There can be no liability under section 1983 unless there is some
3 affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v.*
4 *Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v.*
5 *Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

**Plaintiff's first amended complaint SHALL be brief**. Fed. R. Civ. P. 8(a). Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Plaintiff is reminded that a complaint which is too long and prolix violates Rule 8 and may result in a strike for failure to state a claim when opportunity to correct the pleadings has been afforded with which Plaintiff fails to comply. *See Knapp v. Hogan*, 738 F.3d 1108-09. **Plaintiff's first amended complaint must comply with the 20-page limitation discussed herein.**

Plaintiff is further advised that an amended complaint supercedes the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

**ORDER**

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within 30 days from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order.

///
///
///
///
///

**Plaintiff is advised that his failure to comply with this order—including exceeding the page limitation—will result in sanctions up to and including striking the amended complaint or dismissal of the action.**

IT IS SO ORDERED.

    Dated: **August 1, 2014**　　　　　　　　　　　　**/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE