# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON LEE WOLCOTT,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF RABBIS OF NO. & SO. CALIFORNIA, et al.,<br><br>Defendants. | **Case No. 1:14-cv-00936-DAD-JLT (PC)**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS FOR FAILURE TO STATE A COGNIZABLE CLAIM**<br><br>**(Doc. 30)**<br><br>**30-DAY DEADLINE** |

**I.  Background**

The Court screened Plaintiff's Second Amended Complaint and, since it did not to state any cognizable claims, it issued findings and recommendation on November 9, 2015 to dismiss the action. (Doc. 18.) Plaintiff obtained an extension of time and thereafter filed timely objections. (Doc. 21.) In his objections, Plaintiff requested to be allowed to proceed on the claims found cognizable in the First Amended Complaint ("FAC"). (Doc. 22.) However, once filed, the SAC superceded the FAC. *See Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc). Thus, on April 28, 2016, the Court withdrew the November 9, 2015 findings and recommendation and granted Plaintiff leave to file a third amended complaint to restate claims from the FAC, but leave to amend was not granted as to any of Plaintiff's claims on his inability to convert to Judaism. (Doc. 23.) Rather,

1

the Court issued findings and recommendations the next day to dismiss with prejudice Plaintiff's claims based on his inability to convert to Judaism. (Doc. 24.) The findings and recommendations on Plaintiff's claims of inability to convert to Judaism await review by District Judge, but Plaintiff's Third Amended Complaint ("TAC") is before the Court for screening. (Doc. 30.) As discussed below, Plaintiff fails to state any cognizable claims and the action should be DISMISSED with prejudice.

### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). If an action is dismissed on one of these three bases, a strike is imposed per 28 U.S.C. § 1915(g). An inmate who has had three or more prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, and has not alleged imminent danger of serious physical injury does not qualify to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g); *Richey v. Dahne*, 807 F.3d 1201, 1208 (9th Cir. 2015).

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

### B. Plaintiff's Allegations

In the TAC, Plaintiff alleges that, since August of 2008, CSATF staff have variously

approved and denied the possession and utilization of non-ceremonial artifacts required for the Jewish faith. (Doc. 30, p. 6.) Before 2008, Plaintiff alleges that Tefillin were approved for inmate possession but were thereafter disapproved for unknown reasons. (*Id.*) Chaplain Sharon spoke with the Warden about their importance. (*Id.*) On December 10, 2009, Warden Allison issued a memorandum allowing Jewish inmates to wear their Kippahs at all times, but possession of the Tzittzit (Tallit Katan) and Tefilin were still not permitted. (*Id.*)

Plaintiff further alleges that on November 14, 2010, he filed an inmate appeal about not being allowed to possess non-ceremonial religious artifacts. (*Id.*) Associate Warden Reynoso partially granted Plaintiff's appeal, indicating that Tefillin and Tzittzit (Tallit Katan) were now authorized for inmate possession under "the new equipment list," which approved Tefillin for chapel use, but not for individual inmate possession. (*Id.*, pp. 6-7.) Plaintiff alleges that this prevented him from fulfilling the "commandment to don Tefillin" during morning prayers each day since chapel was held only one day a week and well after morning prayers are to be completed. (*Id.*, p. 7.)

On November 5, 2011, Plaintiff was informed that the DOM had been revised to allow inmate possession of Tefillin. (*Id.*) However, Associate Warden Reynoso prevented Plaintiff from possessing Tefillin as he disapproved the only previously approved vendor that would sell it to Plaintiff. (*Id.*) On December 19, 2012, Director M. Stainer issued a memorandum under which inmates are no longer allowed to individually possess Tefillin. (*Id.*) Plaintiff alleges that these incidents violated his rights under the First Amendment and the RLUIPA. (*Id.*)

The majority of Plaintiff's allegations, which he now identifies by date, are barred by the statute of limitations. And, the last paragraph of allegations involve Director M. Stainer, whom Plaintiff does not name, or otherwise identify as a defendant in this action. Thus, Plaintiff's only allegations which are not time barred against a named defendant occurred in November of 2011 when Associate Warden Reynoso disapproved the only previously approved vendor that would sell Tefillin to Plaintiff.

**C.      Statute of Limitations**

The applicable statute of limitations starts to run upon accrual of the plaintiff's claim, i.e.

when he knows or has reason to know of the injury that is the basis of his action, *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009), which is normally on the date of injury, *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1407 (9th Cir.1994).  Actions under section 1983 fall under the limitations period from the forum state's statute of limitations for personal injury torts, *see Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091 (2007), which is two years in California, *see Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1.

The two-year statute of limitations period is tolled for two years if the plaintiff is a prisoner serving a term of less than life which gives such prisoners effectively four years to file a federal suit.  *See* Cal. Civ. Proc. Code § 352.1(a); *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) (federal courts borrow the state's California's equitable tolling rules if they are not inconsistent with federal law).  Though the term of Plaintiff's sentence is not known, the limitations period for his claims would not differ if he were serving a term of life with the possibility of parole, as that is considered a term of less than life.  *Martinez v. Gomez*, 137 F.3d 1124, 1126 (9th Cir. 1998).  Further, in California "[l]imitations are tolled during period of imprisonment of persons sentenced to life imprisonment."  Cal. Civ. Proc. Code § 352.1, note (West Ann. 2017) (2. Construction and application) (citing *Grasso v. McDonough Power Equip.*, 264 Cal.App.2d 597, 601, 70 Cal.Rptr. 458 (1968) (reversed dismissal on demurrer based on statute of limitations of action brought by inmate sentenced to a life term roughly nine years after precipitating incident,)); *see also Brooks v. Mercy Hosp.*, 1 Cal.App.5th 1, 6-7 (2016) (finding ". . . *Grasso* remains good law.")

Plaintiff filed this action on June 18, 2014.  All claims that occurred more than four years prior, i.e. before June 18, 2010, are barred by the statute of limitations and should be dismissed.  Further, Plaintiff's only allegations against Warden Allison occurred in 2009.  Thus, Warden Allison and all claims against him are time-barred and should be dismissed with prejudice.  Thus, here, the Court considers whether Plaintiff's allegations from November 14, 2010 and after are cognizable.

     **D.**    **Pleading Requirements**

          **1.**    **Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557. Thus, Plaintiff's statements that: "As such Associate Warden Reynoso placed a substantial burden upon Plaintiff's religious exercise, violating RLUIPA and the First Amendment" and that Director Stainer's acts placed "a substantial burden upon Plaintiff's religious exercise and violating his rights under the First Amendment and RLUIPA" are not accepted since nothing more than legal conclusions. (Doc. 30, p. 7.)

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of *pro se* prisoners are still construed liberally and are afforded the benefit of any doubt. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a

defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969. Plaintiff must identify specific facts supporting the existence of substantively plausible claims for relief. *Johnson v. City of Shelby*, __ U.S. __ 135 S.Ct. 346, 347 (2014) (per curiam) (citation omitted).

### 2. Linkage Requirement

To state a claim under 42 U.S.C. § 1983, the complaint must establish an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones*, 297 F.3d at 934. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

### E. Legal Standards

The below legal standards for the claims Plaintiff is attempting to state have been

variously provided to Plaintiff in the prior screening orders. (*See* Docs. 10, 15, 18, 23, 24.) They are once again restated herein since pivotal to the dismissal of these claims with prejudice.

**1. Religion Claims:**

Prisoners "do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Inmates retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)). However, " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *Id*. (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).

**a. First Amendment -- Free Exercise**

The First Amendment is applicable to state action by incorporation through the Fourteenth Amendment. *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 8 (1947). "The right to exercise religious practices and beliefs does not terminate at the prison door[,]" *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir.1987) (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400 (1987)), but a prisoner's right to free exercise of religion "is necessarily limited by the fact of incarceration," *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir.1993) (citing *O'Lone*, 482 U.S. at 348, 107 S.Ct. 2400). A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of his religion. *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir.1987), aff'd sub nom. *Hernandez v. C.I.R.*, 490 U.S. 680, 699, 109 S.Ct. 2136 (1989). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir.2013) (quoting *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir.2006) (internal quotation marks and alterations omitted)).

"To ensure that courts afford appropriate deference to prison officials," the Supreme Court

has directed that alleged infringements of prisoners' free exercise rights be "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. The challenged conduct "is valid if it is reasonably related to legitimate penological interests." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). "[T]he availability of alternative means of practicing religion is a relevant consideration" for claims under the First Amendment. *Holt v. Hobbs*, --- U.S. ---, 135 S.Ct. 853, 862 (2015).

### b. RLUIPA

A prisoner's ability to freely exercise his religion is also protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). 42 U.S.C. § 2000cc-1. RLUIPA protects " 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,' §2000cc-5(7)(A), but of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, --- U.S. ---, 135 S.Ct. 853, 862 (2015) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. ---, 134 S.Ct. 2751, 2774, n. 28 (2014)). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). Like the Free Exercise Clause of the First Amendment, RLUIPA is "not limited to beliefs which are shared by all of the members of a religious sect." *Holt v. Hobbs*, --- U.S. ---, 135 S.Ct. 853, 862 (2015) (quoting *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 715-716 (1981)).

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government shows that the burden is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering . . . that interest." 42 U.S.C. § 2000cc–1(a) (2012).

A "substantial burden" occurs "where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th

Cir.2005) (alteration in original) (quotation omitted). RLUIPA provides greater protection than the First Amendment's alternative means test. *Holt*, 135 S.Ct. at 862. "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . , not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.*

"Context matters in the application of" the compelling governmental interest standard. *Cutter v. Wilkinson*, 544 U.S. 709, 722–23 (2005) (alteration in original) (internal quotation and citation omitted). "RLUIPA contemplates a " ' "more focused" ' " inquiry and " ' "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person' -- the particular claimant whose sincere exercise of religion is being substantially burdened." ' " *Holt*, 135 S.Ct. at 863 (quoting *Hobby Lobby*, 134 S.Ct., at 2779 (quoting *Gonzales v. O Centro Espirita Beneficiente Unio do Vegetal*, 546 U.S. 418, 430-431 (2006) (quoting § 2000bb–1(b)))). RLUIPA requires courts to " 'scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants' " and "to look to the marginal interest in enforcing" the challenged government action in that particular context. *Hobby Lobby*, 134 S.Ct., at 2779 (quoting *O Centro*, 126 S.Ct. 1211; alteration in original).

"The least-restrictive-means standard is exceptionally demanding," and it requires the government to "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Hobby Lobby*, 134 S.Ct., at 2780. "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 815, 120 S.Ct. 1878 (2000).

### c. Plaintiff's Allegations

Plaintiff's factual allegations related to events that occurred after June 18, 2010, are brief. He alleges that on November 14, 2010, he filed an inmate appeal about not being allowed to possess non-ceremonial religious artifacts. (*Id.*) Associate Warden Reynoso partially granted Plaintiff's appeal, indicating that Tefillin and Tzittzit (Tallit Katan) were authorized for inmate possession under "the new equipment list," which approved Tefillin for chapel use, but not for individual inmate possession. (*Id.*, pp. 6-7.) Plaintiff alleges that this prevented him from

fulfilling the "commandment to don Tefillin" during morning prayers each day, since chapel was only held one day a week and well after morning prayers are to be completed. (*Id.*, p. 7.)

On November 5, 2011, Plaintiff was informed that the DOM had been revised to allow inmate possession of Tefillin. (*Id.*) However, Associate Warden Reynoso prevented Plaintiff from possessing Tefillin as he disapproved the only previously approved vendor that would sell it to Plaintiff. (*Id.*) On December 19, 2012, Director M. Stainer issued a memorandum under which inmates are no longer allowed to individually possess Tefillin. (*Id.*)

Notably, Plaintiff's allegations in the TAC do not reflect *any* profession of his belief in Judaism. (*See* Doc. 30.) Plaintiff states nothing upon which to find that Judaism is the religion he adheres to and sincerely believes in to show that his inability to obtain Tefillin and Tzittzit (Tallit Katan) burdens his practice of his religion. *Jones*, 791 F.3d at 1031. In fact, in response to the F&R which the Court previously issued (to dismiss his claims based on his inability to convert to Judaism), Plaintiff objected to the Court assuming for screening purposes that "Plaintiff's Jewish belief is sincerely held and that the practices he desires are rooted in his Jewish beliefs." (Doc. 29, 5:19-6:6, objecting to Doc. 24, 5:27-28.) Plaintiff objected that such an assumption "mollifies Plaintiff's claim against the Federal Rules of Evidence as well as beyond the scope of the screening process. Certainly to assume that Plaintiff is of the Judaism religious denomination moots any claim for conversion to such[1]." (*Id.*)

However, the sincerity of Plaintiff's belief in Judaism is a fundamental prerequisite to a claim under both the First Amendment and RLUIPA. *See Jones*, 791 F.3d at 1031 (First Amendment); *Holt*, 135 S.Ct. at 863 (RLUIPA); *Gillette v. United States,* 401 U.S. 437, 457 (1971) ["'[T]he "truth" of a belief is not open to question'; rather, the question is whether the objector's beliefs are 'truly held.' " (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)]. The Court may not reach back to one of Plaintiff's prior pleadings to ascertain the sincerity of his religious belief, particularly where Plaintiff objects to such a finding. Plaintiff has been directed numerous times that an amended complaint supercedes the original, *Lacey v. Maricopa County*,

---

[1] The Court remains at a loss to understand this objection. A person may believe in the tenets of Judaism, at least for purposes of a § 1983 claim, without having already converted to that religion.

Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220. (*See* Docs. 10, 15, 18, 23, 24.) Despite this, Plaintiff fails to state any allegations upon which to find that his desire to possess the Tefillin and Tzittzit (Tallit Katan) is sincere and based on his "religious belief and not some other motivation." *Holt*, 135 S.Ct. at 862. Further, to the extent that the TAC implies that the rights of Jewish inmates, not including Plaintiff, are being infringed, Plaintiff, as a *pro se* inmate, may not pursue an action under § 1983 for the burdening of others' rights by state action.

Thus, Plaintiff fails to state a cognizable claim for violation of his rights to freely exercise his religion under both the First Amendment and RLUIPA, and, assuming the district judge adopts the findings and recommendations, which previously issued to dismiss Plaintiff's claims regarding his inability to convert to Judaism, this action should be dismissed with prejudice.

**RECOMMENDATION**

The Court has provided the Plaintiff the applicable standards to state cognizable religion claims a number of times in this action. Despite this, he continues to state claims that are not cognizable. Given the dearth of Plaintiff's allegations in the TAC, even after receiving repeated direction on the legal requirements to state a religion claim, it appears futile to allow further amendment. Leave to amend need not be granted as the defects in his pleading, particularly in light of his objections to findings and recommendations which issued on his inability to convert to Judaism (Doc. 29), are not capable of being cured through amendment. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012).

Accordingly, it is the Court **RECOMMENDS** that this entire action be dismissed with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **30 days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the

specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 3, 2017**           **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE